JAMES F. RONEY, APPELLANT, *v.* S. S. BUCKLAND, RE-
SPONDENT.

JUDGMENTS NOT DISTURBED ON MEAGER GROUNDS. In an action against Buckland as surviving partner of the firm of Buckland & Bethel, it appeared in evidence that, in addition to the business of the firm, each of the partners was also engaged in separate business on his own account; that Bethel, being about to depart for San Francisco with the intention of laying in a stock of goods for the firm, Roney delivered to him a package of United States treasury notes and securities; that on his way to San Francisco Bethel lost his life; that after Bethel's death, Roney endeavored to collect his claim from his estate; and it did not appear what had become of the notes and securities after their delivery to Bethel: *Held,* that the evidence to show a delivery to or for the firm was too meager to justify a disturbance of the finding of the Court below in favor of the defendant.

OBJECTION THAT FINDINGS ARE CONTRARY TO EVIDENCE. Where the ground of an appeal is that the findings of fact are contrary to the evidence, the burden of showing error is upon the appellant, and a meager showing is not sufficient.

APPEALS in two cases from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion of the Court. Further information in relation to the facts referred to will be found in the report of the same case, on a former appeal, in 4 Nev. 45.

*Aldrich & DeLong,* for Appellant.

Does the evidence warrant the presumption that the money received by Bethel was received on partnership account? If it does, there being no evidence to overthrow it, it is insisted that the judgment should be reversed. It shows:

1st. The receipt of the notes and bonds by Bethel from Roney.

2d. That Bethel received them on the night immediately preceding the day of his departure for San Francisco.

3d. That Bethel left the next morning, carrying the notes and bonds with him.

4th. That it was the only object of Bethel, in his visit to San Francisco, to purchase the winter supply of goods for the firm of Buckland & Bethel.

5th. That it was not known that Bethel was engaged in any other business, except mercantile business aforesaid, save a freighting business to the east of Fort Churchill, in which he was interested.

The rule of law on this subject as laid down in the text books, is, that a person who gives credit to one partner alone cannot call on the rest; but if there is no evidence to show to whom credit was given, the fact that money borrowed by a partner came to the use of the firm, raises a presumption that the loan was made to him as a partner, and if not rebutted will make the firm liable for the payment. (Parsons on Partnership, 106.)

So far as disclosed by the record, Bethel was engaged in no other business than the mercantile business of Buckland & Bethel, except the freighting business mentioned, which had no connection west of Fort Churchill. The avowed object of Bethel in his trip to San Francisco was to purchase the winter's supply of goods for the firm of Buckland & Bethel. He declared the object of his visit to San Francisco to be such. He was about starting on this trip for that purpose, and a few hours before his departure he borrowed the money in question and took it with him. No other object except the purchase of goods for the firm was mentioned. Is it not a fair presumption that Bethel intended to use the money borrowed for the benefit of the firm? Is it not at least a presumption calling on the respondent to show either that there was no necessity on account of the financial condition of the firm for the loan—or that Bethel had other business relations with San Francisco in which the money might likely have been used, or for which it might have been intended, to escape liability?

The money was brought to Bethel at night; he was to start very early the next morning, and it was natural that no very accurate understanding should have been disclosed either by writing or to those about the parties at the time. Bethel offered to give his or our note for the money, but Roney told him to let it stand until his return. There is nothing in the circumstances surrounding the transaction tending to give it the character of a private loan; on the contrary, everything to impress upon it the character of a loan to the firm.

*Williams & Bixler*, for Respondent.

It is somewhat premature to discuss the question of whether the loan was made for the joint account of Buckland & Bethel, without first ascertaining that there was a loan.    Greenleaf (2 Greenl. Ev. 108, Sec. 112) says : " In proof of the count for money lent, it is not sufficient merely to show that the plaintiff delivered money, or a bank check, to the defendant, for this *prima facie* is only evidence of the payment by the plaintiff of his own debt, antecedently due to the defendant."    (See also 3 Phillips on Evidence, 426, 4th Am. Ed. ; *Welsh* v. *Evans*, 1 Starkie, 474.)

The statement of facts reported in 4 Nev. 45, is not the statement of facts in the case as it now comes before the Court..   All that now appears is that " plaintiff delivered money to Bethel," nothing more.   That *prima facie* was only evidence of the payment of a preëxisting debt due from him to Bethel.   What is there in the record to overcome that presumption ?   Nothing, unless the inquiry of Bethel as to whether he should give a note or receipt could accomplish that feat.   If Bethel used the word *note*, then the creation of a debt was imparted ; but if he said *receipt*, then a debt was being paid.   Whose duty was it to show which word was used ?   Certainly not Buckland's.

Suppose, however, that the evidence had shown a loan to Bethel. Then the question would arise, to whom was the loan made ?   It cannot be claimed that it was in fact made otherwise than to Bethel only, but it is said that it was the account of the firm.   What proof is there of that fact ?   He did not use the money for partnership purposes.   It is not even shown that he ever took it from the safe. He did not state that it was intended to be used for partnership purposes, and the partner seems to have been entirely ignorant of the whole transaction.   After he has started on his way to San Francisco, a package of money is handed to him—for what purpose no one knows—and yet we are told that should charge the defendant.

If there were any difficulty in the case, even conceding that the transaction amounted to a loan, that would be solved by the statement of plaintiff in his petition for letters, and in his complaint against the representation of Bethel's estate, in which he alleges a loan to Bethel, and to Bethel only.

By the Court, JOHNSON, J.:

At a former term of this Court, the two cases now before us were considered—the defendant then the appealing party—in the reported case of *Roney* v. *Buckland*, (4 Nev. 45). In pursuance of the judgment of reversal and the opinion then pronounced, new trials were had by the Court below—jury trial being waived—in which the findings of fact and judgments were for defendant. Plaintiff moved for new trials, on several grounds, which were refused; and thereupon he appealed from both the orders and judgments. As the second trials were conducted in accordance with the law laid down in the opinion reversing said causes, the present appeals must be considered upon the several matters contained in the record now before us, irrespective of the cases made at the former hearing. It is stipulated that the two causes shall be heard together.

The complaint in the one action alleges a loan of five thousand dollars, in United States currency; and in the other, fifteen hundred dollars, Government bonds or securities, by the plaintiff, to one Henry Bethel, on or about the tenth of October, 1865, for account and use of the firm of Buckland (defendant) & Bethel, then partners in a mercantile business, being carried on near Fort Churchill, in this State; furthermore, alleging the subsequent death of said Bethel, demand, and non-payment.

The defendant is sued as surviving partner, to recover the amount of such loans, and value of the securities.

The partnership, demand, and refusal to pay, as alleged in the complaint, are not denied; but in other respects the answers fully traverse all of the material allegations. So, it rested with the plaintiff to make proof of the several averments denied by the answers. To this end it is shown, that on the evening of October 10th, 1865, the plaintiff brought to the Quartermaster's office, at Fort Churchill, where Bethel then was, (purposing to leave the following morning to buy a stock of goods) a package of greenbacks and Government bonds, corresponding to the amount and description stated in the complaints, and delivered them to said Bethel. Bethel, after the count had been made, inquired of Roney "if he wanted a receipt or note for them?" and Roney made answer,

" that he did not think it was necessary." Bethel then placed the package in the safe at the Quartermaster's office, and departed the following morning for San Francisco.

There is no evidence in the present record that the package was taken by Bethel from its place of deposit, the Quartermaster's safe. It was admitted on the trial that Bethel was killed by the explosion of the steamer "Yosemite," on the twelfth of the same month, whilst *en route* to San Francisco.

It is further in proof that the defendant, apart from the firm business of Buckland & Bethel, was engaged in ranching, stock-raising, and hotel-keeping; and that Bethel was also engaged in a separate business—that of transporting goods for the Government, from Fort Churchill to other military posts to the eastward. It was also shown upon the trials, that plaintiff—after fully stating his case to counsel, subsequent to the death of Bethel and his knowledge thereof—applied to the proper Court for letters of administration on the estate of deceased, by petition, duly verified, in which he stated that he was a creditor of such estate, on account of the loan sought to be recovered in these actions; and at a later time, when letters of administration had been granted to another person, he brought suit against the administrator of such estate, on a verified complaint, to establish his claim as a creditor of the individual estate of the deceased, by reason of the same transaction. The latter suit, however, was dismissed before the commencement of these actions.

The appellant seems to have waived the other grounds of motion for new trials, in the lower Court, and here urges a reversal of the judgments on the one issue—that the findings of fact are contrary to the evidence. We have stated the evidence very fully on all material points, as we find it in the transcript. The proof is undoubted, that plaintiff delivered to Bethel the moneys and securities set forth in the complaint; but whether as a loan does not appear, and there is too meager a showing to justify the conclusion that Buckland is chargeable as copartner of Bethel. The authorities cited on behalf of appellant fully support this view.

Judgments affirmed.