# THE SUPREME COURT

#### OF THE

# STATE OF NEVADA

### JANUARY TERM, 1920

[No. 2390]

M. REINHART, ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF DOMINGO BENGOA, DECEASED, APPELLANT, *v.* MARTIN ECHAVE, RESPONDENT.

[185 Pac. 1070; 187 Pac. 1006]

1. WITNESSES—NO TESTIMONY BY SURVIVING PARTY TO TRANSACTION.

If one party to an original transaction is precluded from testifying by death, the other is not entitled to the undue advantage of giving his own uncontradicted and unexplained account of the transaction.

2. APPEAL AND ERROR—ERROR IN ADMISSION OF TESTIMONY AS TO TRANSACTION WITH DECEDENT HARMLESS.

In a son-in-law's action against his father-in-law on a note signed by the father and payable to his daughter and the son-in-law, error in admitting the father's testimony as to the manner in which his daughter induced him to sign the note, though the daughter at the time of trial was dead, *held* harmless and not ground for reversal under Rev. Laws, 5315, in view of the testimony of the mother of the girl who was present at the time of the signing.

3. BILLS AND NOTES—DUTY TO OFFER TESTIMONY IN SUPPORT OF NOTE ATTACKED.

In a suit on a note made out in printing and three different handwritings, stripped by evidence of defendant maker of its commercial character, and based ostensibly on some sort of a contract between the maker and the plaintiff, his son-in-law, it was the duty of the plaintiff, having notice of the defenses against the note, to be prepared on trial to offer some evidence other than the note itself to entitle him to verdict.

4. BILLS AND NOTES—DUTY TO SHOW WILLING AND INFORMED SIGNING.

Where plaintiff before his marriage to defendant's daughter had said he would not marry her except for money, plaintiff, suing on a note signed by defendant to the order of plaintiff and defendant's daughter, is under duty to offer some explanation of his conduct consistent with his interest and fair dealing with defendant to show that the note was signed willingly and knowingly.

ON PETITION FOR REHEARING

1. GIFTS—GIFT OF DONOR'S OWN NOTE NOT VALID.

One cannot make his own note the subject of a gift to such an extent that it can be enforced by the donee against the donor, or against his estate.

APPEAL from Sixth Judicial District Court, Humboldt County; *Edward A. Ducker,* Judge.

Action by M. Reinhart, administrator with the will annexed of Domingo Bengoa, deceased, against Martin Echave, resulting in verdict for defendant. From an order denying plaintiff a new trial, he appeals. **Affirmed. Petition for rehearing denied.**

STATEMENT OF FACTS

This action was commenced by Domingo Bengoa against Martin Echave to recover judgment for the sum of $4,000 upon a promissory note. The paper was originally a skeleton note, and is certified with the record for our inspection. It reads as follows:

*"$4,000.00          McDermitt, Nev., Jan. 5, 1911.*

*"Five years after date* without grace, for value received, I promise *to pay to Domingo Bengoa and my oldest daughter Martina Echave, McDermitt, Nevada,* the sum of *$4,000.00 four thousand dollars* in gold coin of the United States, with *no interest* no date until paid; and in case suit or action is instituted to collect this note or any portion thereof, I promise to pay all costs and expenses and such additional sum as the court may adjudge reasonable as attorney's fees in said suit or action. *To be paid on the year of 1916,* interest payable.
*"Martin Echave."*

The portion italicized is written in three different

handwritings. The words "five years after date" and "Martin Echave" are accounted for. The other is in the handwriting of one person, but made at different times. The remainder is in print.

Plaintiff alleges in his complaint that his copayee sold, assigned, and delivered to him, for value, all her interest in the note, and that he is the legal owner thereof; that his copayee died on or about the 27th of October, 1913.

As against the note the defendant, after denying the averments of the complaint, set up two affirmative defenses. One that the payees conspired to cheat and defraud defendant out of the principal of the note, and the other, want of consideration.

Plaintiff denied these defenses, and the issues were submitted to a jury for determination. The verdict was for defendant. Plaintiff moved for a new trial, which was denied. Plaintiff died. The cause was revived in the name of appellant, who prosecutes this appeal from the order denying plaintiff a new trial.

The evidence for the defendant, aside from his own testimony, tends very strongly to show that the deceased payee was for several years under the control and influence of plaintiff. She was about 18 years of age, very much in love with plaintiff, who was 20 years her senior, and so much infatuated with him that her parents had lost control over her. She spent most of her time away from the home of her parents in company with the plaintiff. On one occasion defendant telephoned plaintiff that if he was not going to marry his daughter to send her home. Shortly prior to the date of the note deceased said to her mother that if she could get money from her father plaintiff would marry her. She said to another witness that if she could not get money from her father to enable her to marry plaintiff she would go to a bad house. It is undisputed that plaintiff informed deceased, and on several occasions the defendant, that he would not marry deceased unless defendant gave him money; but at no time did plaintiff or deceased state

what amount of money it would require in order to induce plaintiff to marry the deceased. In the conversations when money was suggested defendant informed plaintiff that he had no money and his children would share equally in what he possessed at his death. Plaintiff stated he wanted money then. Defendant at no time promised plaintiff $4,000 to marry his daughter, or any sum, or note, or anything of value.

It appears from the testimony of the mother of deceased that the latter came to her home in the latter part of December, 1910, and in her presence deceased represented to defendant that she had a paper for him to sign for the purpose of establishing a school district or to obtain a school for his vicinity; that the deceased represented that the paper which she then exhibited to defendant was given her by a Mr. Sprague with instructions that it be signed by him and returned the next day; and that if the paper was not in the hands of the proper authorities by the 1st of January,, 1911, defendant would get no school. The mother testified that she saw the paper at the time and that it had no writing on it but some printing; that the deceased retained the paper and went with her father into an adjoining room to sign the paper, and the next morning the deceased left her home, taking the paper with her. The mother took no part in the conversation between deceased and defendant. Her testimony was given without objection or cross-examination.

Defendant, over plaintiff's objection, testified that the representation of the deceased as to the character of the paper and its purpose was false and fraudulent; that because of his trust and confidence in his daughter, and relying on her honesty and the truth of her statement, she well knowing his anxiety about obtaining a school for his several children of school age, he was induced to sign the paper without examination or reading it, and he signed the paper supposing it to be for a school purpose. Now it turns out, more than five years after the date of

this transaction, that the defendant signed a promissory note, the note sued on. The first intimation the defendant had that the paper was an engagement to pay money was in the spring of 1916, when plaintiff said to him that he had a paper against him, and, when pressed for a statement as to what the paper was, plaintiff replied that it was "the paper you gave to Martina and me."

The deceased delivered the paper to plaintiff shortly after its date. The plaintiff manifestly accepted the note with some suspicion, because he took the paper to a third party, in whom he had confidence, and inquired of him if the paper was all right. Being assured that it was he left it with said party for safe-keeping.

It further appears that for several months after the note was overdue plaintiff and defendant had business dealings whereby plaintiff became indebted to defendant in installments in the sum of several thousand dollars, but the note in question was never adverted to in any of these transactions, and defendant never saw the note until shortly before the suit. When plaintiff left the note with his friend for safe-keeping, the payees, a few days thereafter, between the 10th and 15th of January, 1911, intermarried without the knowledge of deceased's parents.

In rebuttal plaintiff testified that, if he had been informed the note was wrong, he would have obtained another note from the defendant before he married defendant's daughter. The plaintiff introduced the note with the admission of the defendant's signature, proved the death of his copayee, and rested his case without offering any evidence in rebuttal other than that as above stated.

*Salter & Robins,* for Appellant:

It was error to allow respondent to testify to a transaction when the other party was dead. Rev. Laws, 5419. "The plaintiff was not a competent witness * * *.

The proof necessarily concerned transactions with the deceased about which he could testify, and might testify, differently, and we think he was rendered incompetent as a witness for any such purpose." Gage v. Phillips, 21 Nev. 156. The act of the legislature prevents living witnesses from establishing communications with parties whose lips have been sealed by death. The decisions upon the statute are unequivocal and numerous. Roney v. Buckland, 5 Nev. 161; Vesey v. Benton, 13 Nev. 284; Schwartz v. Stock, 26 Nev. 128.

"If a note is payable to several jointly, action may be brought by the survivor upon the death of the other. 7 Cyc. 1033; 8 Cyc. 89; Standard Ency., vol. 4, p. 237.

Objection is not waived simply because a witness is cross-examined on matters touched upon in direct examination. Cathay v. Missouri, 33 L. R. A. 103; Laber v. Hotaling, 46 Pac. 1070.

*Thomas A. Brandon,* for Respondent:

Respondent had a right to testify, and was a competent witness in his own behalf, in so far as he did testify. 40 Cyc. 2301, 2306, 2307, 2318, 2319.

It is the general rule that where two or more persons are parties on the same side of a contract or cause of action, the death of one of them will not exclude testimony against the survivor or survivors. 40 Cyc. 2306; Fulkerson v. Thornton, 68 Mo. 468; Goss v. Austin, 93 Mass. 525; Nugent v. Curran, 77 Mo. 323; Davis v. Dyer, 60 N. H. 400; Sprague v. Swift, 28 Hun, 49; Hines v. C. C. & L. Co., 64 N. E. 886.

One of the main defenses in this action is based upon fraud. Where fraud in the transaction is pleaded, the statute does not apply. Jones on Ev., sec. 774; Caston v. McDowell, 107 N. C. 546.

The fact that one of the parties to a contract is dead furnishes no sound reason for not receiving evidence of the intent of the other party as manifested by his declarations. 40 Cyc. 23. A party to an action against an administrator may testify that he had had numerous

conversations with deceased, where the details of these conversations are not given. Williams v. Mower, 14 S. E. 483. Plaintiff may state date and fact of a conversation with decedent's testator. Trimmer v. Thompson, 19 S. E. 291; Barlow v. Buckingham, 26 N. W. 58.

By the Court, SANDERS, J., after stating the facts:

The several assignments of error may be grouped and considered as one, namely, that the trial court, in violation of law, allowed the defendant to testify to a transaction when the other party is dead. Rev. Laws, 5419.

Counsel for respondent urges upon us not to consider the assignment of error because it is not in conformity with the statute. Stats. 1915, p. 164. We are of the opinion that the alleged error is sufficiently designated and must be considered.

1, 2. Appellant's particular grievance, though not in terms so stated, is that the trial court allowed defendant, in support of his defense of fraud in the inception of the note, to testify that his signature thereto was obtained from him by a very gross and fraudulent representation perpetrated upon him by his deceased daughter. It is not denied that, if one party to an original transaction is precluded from testifying by death, the other is not entitled to the undue advantage of giving his own uncontradicted and unexplained account of the transaction. Roney v. Buckland, 5 Nev. 219. But it will be noted that the representation of the deceased concerning the character and purpose of the paper was made in the presence of the defendant's wife, who testified concerning the representation without objection or cross-examination. Her testimony and that of defendant, independent of and unconnected with the transaction, was such that, conceding, but not deciding, that it was error to permit the defendant to give his uncontradicted and unexplained account of the transaction between himself and the deceased payee, it was error of such character that this court would not be justified in disturbing the verdict of the jury on that account. It is

not every error occurring at the trial that will warrant the court in reversing the judgment of the trial court. We are admonished by statute to disregard an exception unless it be material and affects the substantial rights of the parties. Rev. Laws, 5315.

3, 4. In opposition to this conclusion, it is in effect argued that when plaintiff introduced the note with the admission of signature he made out a prima facie case, and, with the objectionable testimony removed, was entitled to a verdict. In this contention we are unable to concur. An inspection of the note provokes suspicion of its genuineness to such an extent as to make it incumbent upon plaintiff to offer some explanation of its condition when he first saw it. This the plaintiff deliberately refrained from doing. In a suit on a note circumstanced as this was, stripped by evidence for the defendant of its commercial character, based ostensibly on some sort of a contract, it became and was the duty of the plaintiff, having notice of the defenses against the note, to be prepared at the trial to offer some evidence other than the note itself to entitle him to a verdict. The silence of plaintiff tended to impress the jury that plaintiff was either afraid to speak or preferred to rely upon the law merchant and the death of his copayee to make his case. Though death had sealed the lips of his copayee, the relationship of the payees was such that plaintiff could not plaster his mouth with the note to preclude himself from giving testimony, at least tending to show that he had no notice of the defects or infirmities cast upon the note by competent evidence for the defendant. Plaintiff's conduct prior and subsequent to the delivery of the note to him by the deceased was the subject of investigation. The jury may have regarded his conduct as being suspicious, if not dishonorable. The plaintiff had an opportunity to explain it, and an interest in so doing, yet he failed and refused. It is but reasonable to assume the jury, as it had the right, placed the worst construction on plaintiff's conduct. 10 R. C. L. 888. The plaintiff was an actor in the procurement of the note, as well

as the deceased.   The odious situation attributable to him and culminating in his possession of the note impelled plaintiff to offer some explanation of his conduct consistent with his honesty and fair dealing with the defendant.   The note standing alone does not answer the odious charges against it.

Upon the whole case we are satisfied there was sufficient competent evidence to warrant the verdict.   We therefore conclude to affirm the order denying to plaintiff a new trial.

## ON PETITION FOR REHEARING

By the Court, SANDERS, J.:

It is urged that the note sued on was in fact and truth a gift from the defendant, Echave, to his daughter and plaintiff Bengoa.   If this be true the weight of authority has established that one cannot make his own note the subject of a gift to such an extent that it can be enforced by the donee against the donor in the latter's lifetime, nor against his estate after his death.   1 Dan. Neg. Inst. (6th ed.), sec. 180; 3 R. C. L. 937.

Had the record disclosed positively that the note was a gift, the plaintiff would have been spared criticism by this court simply holding that upon his own showing plaintiff had no cause of action.

DUCKER, J., did not participate.