ESTATE OF JOHN B. ATKINS, J. B. ATKINS, JR., AGENT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6884.   Promulgated October 8, 1927.

Notes given by decedent to his sons for no consideration other than his desire to equalize gifts to his children *held* to be not enforceable claims against the estate and not deductible in determining the value of the net estate.

*J. D. Wilkinson, Esq.*, for the petitioner.
*J. T. Greaney, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in estate tax under the Revenue Act of 1921. Of the deficiency determined in the amount of $1,448.90, only $945 is in controversy. The question for decision is whether or not the amount of $23,625.24, representing one-half of the amount of notes given by decedent to his sons, is deductible from decedent's gross estate in the computation of Federal estate taxes.

### FINDINGS OF FACT.

Decedent, John B. Atkins, died intestate on October 28, 1923, a resident of the State of Louisiana. Prior to July, 1922, he had given his two daughters homes and cash from time to time and kept an accurate record of such gifts. He had also given one of his sons, J. B. Atkins, Jr., certain cash. He gave his two sons to understand that when they became of age he would give them amounts to equal the gifts he had made his daughters. On July 1, 1922, decedent executed and gave his sons promissory notes payable to their order. The note to J. B. Atkins, Jr., was for the amount of $8,025.48, payable on or before five years after date. The note given to the other son, Joe F. Atkins, was for the amount of $39,225, payable on or before ten years after date. Both notes bore interest at the rate of 6 per cent.

Prior to Atkins' death the amount of $10,000 was paid on the note given to Joe F. Atkins. The principal of the note given to J. B. Atkins, Jr., was paid in full by the heirs on March 25, 1924. The heirs have paid the balance on the note of Joe F. Atkins in full in varying amounts beginning July 7, 1924, and final payment being made July 1, 1926.

### OPINION.

ARUNDELL: The heirs of Atkins claim that the notes aggregating $47,250.48 given to the decedent's sons were an obligation of the marital community and that one-half thereof, or $23,625.24, is a proper deduction from the gross estate of Atkins.

The Revenue Act of 1921 was in effect at the date of the death of Atkins. Section 403 of that Act provides that the value of the net estate shall be determined by deducting from the value of the gross estate, *inter alia:*

Such amounts for * * * claims against the estate * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered * * *.

The Negotiable Instruments Law, which is included in the statutes of Louisiana, provides in section 28:

That absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto*, whether the failure is an ascertained and liquidated amount or otherwise. (Wolffs' Louisiana Stats. (1920) p. 163.)

The respondent disallowed the amount claimed as a deduction on the ground that there was no consideration for the notes and that therefore they were not valid and enforceable obligations of the decedent. The petitioner admits that there was no consideration other than the desire or the obligation on the part of Atkins to give each of his children the same amount and contends that such moral obligation is sufficient consideration for the notes. Petitioner quotes article 227 of the Civil Code of Louisiana as follows:

*Parental Obligations.*—Fathers and mothers, by the very act of marrying, contract together the obligations of supporting, maintaining and educating their children.

The notes involved here were not given, so far as is shown pursuant to any obligation to support, maintain and educate the children of decedent and the quoted article therefore has no application. Other articles quoted by petitioner relating to collation and limitations on gifts are equally inapplicable as the only question involved here is whether the amounts of the notes constituted a valid claim and hence an allowable deduction from the decedent's estate.

It seems to be uniformly held by the modern cases that a mere moral obligation or duty is not sufficient consideration for a note; 3 R. C. L. 938; 8 C. J. 240; *Sullivan* v. *Sullivan*, 122 Ky. 707; 92 S. W. 966; 7 L. R. A. (N. S.) 156 and case note. The gift of one's own note creates no enforceable claim against either the donor or his estate. In *Wisler* v. *Tomb*, 169 Cal. 382; 146 Pac. 876, it is said in part:

The gift of the donor's own promissory note, either inter vivos or causa mortis, does not create an enforceable obligation in favor of the donee against the donor or his estate. Being a mere promise without consideration to give a sum of money in the future, such a note is of no legal consequence.

\*       \*       \*       \*       \*       \*       \*

A note intended as a mere gift with no other consideration than natural affection cannot form the basis of an action at law. The gift is always revocable until it is executed and a promissory note intended as a gift is but a promise to make a gift in the future. The gift is not executed until the note is paid. *Williams* v. *Forbes*, 114 Ill. 171; 28 N. E. 463.

To the same effect is *Reinhart* v. *Echave*, 43 Nev. 323; 187 Pac. 1006, holding that:

\* \* \* The weight of authority has established that one can not make his own note the subject of a gift to such an extent that it can be enforced by the donee against the donor in the latter's lifetime or against his estate after his death. Dan. Neg. Inst. (6th Ed.) Sec. 180; 3 R. C. L. 937.

The case of *In re Wiles* (surrogate's court), 101 Misc. Rep. 701; 168 N. Y. S. 940, was a suit on a promissory note given by decedent to his daughter. It was there held:

The law seems well settled that a meritorious consideration, or the duty even to provide for a wife or child, is not sufficient to support an executory contract. The note in question amounted simply to a promise to pay and was an executory contract only, and such voluntary promise cannot be enforced against the donor in his lifetime, nor after his death against his executors and administrators. This rule is supported in the matter of *Whitaker* v. *Whitaker*, 52 N. Y. 368, 11 Am. Rep. 711, and has been followed. The law seems also to be well settled that natural love and affection do not constitute a sufficient consideration to support an executory contract, and that the purpose of equalizing the distribution of the maker's estate among his children is not sufficient consideration for the making of a note. This is so stated in *Hadley* v. *Reed*, 12 N. Y. Supp. 163.

\*      \*      \*      \*      \*      \*      \*

While the intention of the donor was to give claimant the sum of money mentioned, there was lacking a present delivery thereof with a renunciation by him of dominion and control thereover. This act on his part amounted to nothing more than an attempt to effect a testamentary provision, and in that respect was ineffectual and void, and must fail in that respect also for want of observance of the statutory requirements necessary for the making and attesting of a last will and testament.

While the cases above did not arise in Louisiana, no decisions have been called to our attention nor have we been able to find any that indicate that the courts of that State would place a different construction on instruments of the character here involved. At page 14 of the preface to Saunders Revised Civil Code of Louisiana, 2d ed., 1920, it is said:

At a very early date, the Supreme Court of Louisiana held that the commercial law of Louisiana was the commercial law of the other states of the Union and of England.

In the case of *Wagner* v. *Kenner*, 2 Rob. p. 122, the court say:

The Superior Court of the late Territory of Orleans very early held that, although the laws of Spain were not abrogated by the taking possession of the country by the United States, yet that, from that event, the commercial law of the Nation became the commercial law of New Orleans; and this Court has frequently recognized the correctness of these early decisions, principally in cases of bills of exchange, promissory notes and insurance.

\*      \*      \*      \*      \*      \*      \*

In other words the common law as to what are the rules of commercial law, prevails in Louisiana just as it does in the other states, except in so far as particular matters in commercial law may have been regulated by particular statutes. The large and important subjects of private corporations, insurance (life, fire, accident and marine), negotiable instruments, transportation law and partnership, are therefore governed by common-law rules and principles, except in those details which have been differently regulated by some express provision of statutory law in Louisiana. In the department of commercial law, then, the law of Louisiana is, in its large features and principles, the same as the commercial law in the other states of the Union, and is construed and developed solely with the aid of common-law literature.

In the case of *Chafraix* v. *Price*, 29 La. Ann. 176, it is held:

In Milaudon's case this Court settled conclusively that the laws and usages of commerce to which reference is to be had by our tribunals in interpreting commercial contracts are those sanctioned by the law merchant of the United States and explained and adjudicated by the Supreme Court. McDonald v. Milaudon, 5 La. 402.

The words of the taxing act providing for deduction "for claims against the estate" must be read as qualified by the subsequent clauses which limit the deductions therefor to the claims that "are allowable by the laws of the jurisdiction * * * under which the estate is being administered * * *." Otherwise any claim made, no matter how spurious, would result in an allowable deduction from the gross estate. Suppose that in the instant case decedent had given notes to his sons, without consideration other than love and affection, in amounts representing the entire value of his gross estate. The obvious result would be that although the notes were unenforceable, the estate would escape taxation through the simple expedient of the heirs taking over the entire estate without the formality of presenting their claims, founded on the notes, for adjudication. In view of the wording of the statute it is the duty of the estate to show that claims for which deductions are sought are allowable under the laws of the State having jurisdiction. This the estate has failed to do in the present case.

The case of *Succession of Driscoll*, 125 La. 287; 51 So. 200, was a suit against an administrator to recover an alleged indebtedness of the decedent. The administrator pleaded the statutory prescription period. The claimant urged that the administrator had waived the prescription by setting up the amount of the claim in his account. It was held that:

* * * An administrator has no authority to renounce a prescription once acquired.

This holding of the Louisiana court is in accordance with the general rule, stated in 11 R. C. L. 215, as follows:

It is the duty of an executor or administrator to preserve the estate in his hands, and to protect it from loss. Included within this duty is the obligation to protect the estate against every demand against it which is not legally enforceable.

In the same work at page 277 it is stated:

It is the duty of an executor or administrator to defend all suits that may be brought against the estate and to protect the estate from invalid and doubtful claims. It has been said that he should interpose every legal objection to them that industry and care can furnish.

The only conclusion to be drawn from what we have said is that had the notes been formally presented to the estate as claims, the payees could not have enforced payment. We are told that in this

case there was no administration on the estate, but that the heirs stepped in and took over the property of decedent. Just how that was accomplished is not shown, but neither is it shown that such procedure served to give the notes a different status than if formal administration had been had upon the estate.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

GREEN dissents.