EULA LOVELL ZEIGLER, Appellant, *v.* ROBERT MOORE, Administrator of the Estate of AL CHRIST, Deceased, Respondent.

No. 4092

February 9, 1959                    335 P.2d 425

*A. D. Jensen,* of Reno, for Appellant.

*Goldwater, Taber & Hill,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

This appeal is taken from an order and judgment of involuntary dismissal entered on defendant's motion under Rule 41(b) NRCP at the conclusion of plaintiff's case.

Plaintiff sued one Al Christ for damages alleging that her automobile was struck in the rear by a car negligently operated by Christ in August 1955 on Highway 40 about one and one-half miles west of Winnemucca, while plaintiff was driving easterly toward that city. Christ answered, denying negligence but admitting a collision between the two cars. He also pleaded plaintiff's contributory negligence. Christ died in May 1957 and Robert Moore was substituted as his administrator before trial. At the trial the court excluded under the dead man's rule certain testimony of the plaintiff and of plaintiff's witness, sheriff Delbert Moore. These and other rulings are assigned as error.

(1) An insurance adjuster had taken statements from both plaintiff and the decedent, which statements were written in longhand by the adjuster and signed by the parties. Plaintiff moved under Rule 34 for an order for the production of these documents so that the same might be inspected and copied, and assigns error and prejudice in the denial of such motion. The record shows, however, that a true and correct copy of the original statements taken was produced in open court and read into the record and is actually a part of the record on

this appeal. If a discovery of the nature and contents of the statements was necessary to the prosecution of plaintiff's case, copies of the statements were before her. It is so evident that plaintiff was in no way prejudiced by the denial of her motion that discussion of the error assigned is unnecessary.

(It should be noted that plaintiff had been permitted to read the copies of the statements into the record for the purpose of making an offer of proof. She then offered the copy of her own statement in evidence. An objection was sustained on the ground that if her direct testimony was inadmissible under the dead man's rule her extrajudicial statement was, a fortiori, inadmissible. Plaintiff then offered the copy of the statement made by the decedent, but immediately withdrew the offer. All of this was without the presence of the jury. It may be noted also that no objection was made to either statement on the ground that it was a copy.)

(2) Delbert Moore, sheriff of Humboldt County, testified that Christ, after the accident, had come to the office and made an "accident report" and, in his conversation in making the report, talked to the witness "about how the accident happened." He was then asked: "What did he tell you?" Objection on the ground "that this witness is rendered incompetent by reason of § 48.010 NRS" was sustained.

The statute commonly known as the dead man's rule now appears, in pertinent part, in our codes as NRS 48.010 and 48.030, as follows:

"48.010   1. All persons, without exception, otherwise than as specified in this chapter, who, having organs of sense, can perceive, and perceiving can make known their perceptions to others, may be witnesses in any action or proceeding in any court of the state. Facts which, by the common law, would cause the exclusion of witnesses, may still be shown for the purpose of affecting their credibility. No person shall be allowed  to testify:

"(a) When the other party to the transaction is dead.

"(b) When the opposite party to the action,   *   *   * is the representative of a deceased person, when the facts

to be proven transpired before the death of such deceased person; * * *

. "48.030   The following persons cannot be witnesses:

"3.   Parties to an action   *   *   *   against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person."

.The present statute as thus quoted is its present form after having been subjected to a number of amendments, all of which modified the common law rule disqualifying as witnesses all persons interested in the event of the action, generally recognized to mean that the witness would either gain or lose by direct legal operation or effect of the judgment. It should be noted that such rule was one of disqualification of witnesses and did not relate to the witness's testimony.

The error assigned in sustaining the objection to the testimony of sheriff Delbert Moore as to statements made to him by the decedent is well taken. The statutory exclusion of the testimony of witnesses under the sections above quoted has been consistently held by this court not to apply to disinterested third persons. Burgess v. Helm, 24 Nev. 242, 51 P. 1025; Kimble v. First National Bank, 73 Nev. 25, 307 P.2d 615; Onesti v. Samoville, 48 Nev. 441, 233 P. 846; Su Lee v. Peck, 49 Nev. 124, 240 P. 435; Bright v. Virginia and Gold Hill Water Co. (C.C. 9th) 270 F. 410.

Respondent contends that even if the order excluding Delbert Moore's testimony was error, it could not possibly have prejudiced appellant, was harmless error and not ground for reversal. Respondent bases this contention upon the offer of proof that followed the court's ruling, namely, that the sheriff would testify that Christ told him shortly after the accident "that he, Christ, hit the plaintiff's car in the rear end, and that's the end of the offer of proof, your Honor." Respondent contends that such testimony would establish the mere fact that an accident had occurred without any inference of negli-

gence. At this point, however, there had been no evidence in the case that Christ's car had struck appellant's car in the rear. While it is true that this fact alone would not necessarily establish negligence on Christ's part, there can be no doubt that it would constitute a part of such proof. The exclusion of the evidence was therefore prejudicial. New trial must be ordered.

(3) Appellant assigns as error the court's ruling precluding appellant from testifying *as to any fact* prior to Christ's death. The position taken by the respective parties is somewhat confusing. Respondent, in support of the court's ruling, recites the way the issue arose as follows: "At the trial appellant was called as a witness in her own behalf to testify *to the facts of the accident*" and says that the question presented is "whether the survivor of an automobile accident can give uncontradicted testimony *as to the manner in which the collision occurred* when the lips of the other party are sealed by death." However, respondent's objection as made in the trial court and the rulings which the trial court was prevailed on to make by reason of such objection were far broader than the enunciation of the proper rule sought from this court and as expressed in italics above. Plaintiff took the stand and was asked, "Will you please state your name?" Objection was made that the plaintiff "is rendered incompetent [to testify] under the so-called Nevada dead man's statute." Thereupon the jury was excused and over thirty pages of the transcript are devoted to argument, whereupon the objection was sustained. Thereupon the following took place: "Mr. Jensen: Now, just so I understand the court's ruling, * * * that means that under the court's ruling that plaintiff cannot testify as to any fact prior to May 11th, 1957, May 11th being the death of the decedent? Right? Mr. Taber: Well, that is the basis of my objection, yes. The court: Yes. Mr. Jensen: So then any fact that occurred prior to May 11, 1957, that relates to the medical bills sustained, and relates to any other facts related to the accident? Mr. Taber: Medical bills haven't been offered. Mr. Jensen: Yes. So the ruling would exclude them? The court: Yes."

Appellant then proceeded to make an offer of proof including her age, place of employment, rate of employment, nature and hours of employment, her leaving of her place of employment, the route pursued by her, the nature of the road, visibility, traffic, the striking of her car from behind, her confinement in the hospital, her doctor bills, the amount of her lost wages and her pain and suffering.

She also offered to testify that, presumably at the time when defendant was close enough behind her to have observed the matters testified to and could have contradicted the same of his own knowledge, "at no time prior to the time of collision did she cause the brakes to be applied in a sudden manner, nor did she indicate that she was going to make either a left or a right turn * * * that her car was suddenly and without warning hit from the rear."

The offer of proof was objected to in its entirety and was denied in its entirety.

Appellant now contends as follows: "She is not attempting to testify that the decedent's car was driven in a reckless manner. She is not by any direct statement or inference attempting to fix blame or attach fault to any person. Stating it succinctly, she merely desires to testify that she was driving down the highway in the proper lane, at a speed reasonable under the circumstances and that thereafter her car was struck in the rear."

It will thus be seen that on the one hand respondent obtained an exclusionary ruling far broader than the one he now seeks to sustain; and on the other hand appellant sought, by her offer of proof, to testify in far wider scope than she now claims admissible.

Appellant insists first in this respect that she is not precluded from testifying under NRS 48.010 (1) (a) because the decedent cannot be said to be "the other party to the transaction" inasmuch as no "transaction" was involved; that a tort action is not a transaction. There is indeed some authority to support this view. See Shaneybrook v. Blizzard, 209 Md. 304, 121 A. 2d 218

(1956). In many cases this is based upon the wording of the particular state statute involved and is of no assistance here. The Maryland case just cited, for example, expresses a preference for the New York rule. The New York statute, however, definitely fixed the exclusion as applying to testimony concerning "a personal transaction or communication" with the decedent. The overwhelming weight of authority supports the rule that the dead man's statute applies to actions ex delicto and that such actions are embraced within the statutory use of the word "transactions." 97 C.J.S. 565, Witnesses, sec. 133, n. 92; 58. Am.Jur. 151, Witnesses, sec. 223. In Warren v. DeLong, 59 Nev. 481, 97 P.2d 792, this court had under consideration our statute providing that if the defendant omit to set up a counterclaim arising "out of the transaction" he could not afterward maintain an action against the plaintiff therefor. NCL 1929, secs. 8603, 8604. This court there held that the term "transaction" was broader than "contract" and broader than "tort" and that it might include either or both. It approved the setting up of a counterclaim for conversion under such statute.

If then we apply the statute to tort actions as well as personal transactions between the parties the testimony of the plaintiff was properly excluded under the holdings of this court in earlier cases, defining the purpose and extent of the rule with reference to those matters which the decedent could have contradicted of his own knowledge. By the same token, the appellant's testimony as to her medical bills, her pain and suffering and matters of like nature which the decedent could not have contradicted of his own knowledge, was clearly admissible and the rejection of such testimony was prejudicial error.

Those items were entirely beyond the operation of the reasons for the rule of exclusion repeatedly enunciated by this court: To prevent the living from obtaining unfair advantage because of death of the other. Maitia v. Allied L. & L. S. Co., 49 Nev. 451, 248 P. 893. Nor shall the living be entitled to the undue advantage of giving his own uncontradicted and unexplained account of what transpired beyond possibility of contradiction

by the decedent. Reinhart v. Echave, 43 Nev. 323, 185 P. 1070, rehearing denied 43 Nev. 323, 187 P. 1006. The whole object of the code provision is to place the living and dead on terms of perfect equality, and, the dead not being able to testify, the living shall not. Bright v. Virginia and Gold Hill Water Co. (C. C. 9th) 270 F. 410. The object of the statute is to prevent one interested party from giving testimony when the other party's lips are sealed by death. Goldsworthy v. Johnson, 45 Nev. 355, 204 P. 505. But when the above stated reasons for the rule do not appear, this court has not hesitated to admit in evidence the testimony of an interested party. Goldsworthy v. Johnson, supra; Maitia v. Allied L. & L. S. Co., supra; Hough v. Reserve Gold M. Co., 55 Nev. 375, 35 P.2d 742; Edmonds v. Perry, 62 Nev. 41, 140 P.2d 566. Therefore the rule would not preclude plaintiff's description of her own actions and the road conditions prior to the point when within limitations of time or space the decedent could have contradicted her testimony of his own knowledge.

The lines delimiting the actual "transaction" within the knowledge of the decedent must be drawn by the trial court. Whether these lines are drawn within limits of space or within limits of time within which matters were under the observation of the decedent, or both, must likewise be determined by the trial court.

(4) Finally it is contended by appellant that the effect of our statute providing for the survival of tort actions against the estate of a decedent (NRS 41.110) is entirely destroyed by application of the dead man's rule in cases such as the present one where the collision occurs in the desert without witnesses other than the parties. This is not necessarily so. In virtually all cases much physical evidence is available—skid marks, tire tracks, the condition of the respective cars involved showing the nature of the collision, etc. Appellant further contends that inasmuch as the application of the dead man's rule is condemned by all writers of the law of evidence as leading to harsh and unjust results (see Wright v. Wilson, 3 Cir., 154 F.2d 616, 170 A.L.R. 1237) this court should

not, in a situation that is res integra in this state, extend its application to tort actions. This, however, is a matter of public policy, in which are balanced against each other the chance of injustice in individual cases on the one hand and the protection of estates from fraudulent demands on the other. A change of policy having such far-reaching results should be a matter for consideration by the legislature rather than of the court. Miller v. Du Bois, 153 Cal.App.2d 310, 314 P.2d 27 (1957) (hearing denied).

Reversed and remanded for new trial.

MERRILL, C. J., and McNAMEE, J., concur.