JOYCE C. NICKLO, APPELLANT, *v.* PETER PAN PLAYSKOOL, RESPONDENT.

No. 12162

March 2, 1981                                    624 P.2d 22

*Richard W. Myers,* Las Vegas, for Appellant.

*John P. Fadgen,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant Nicklo placed her child in the custody of respondent Peter Pan Playskool for day care. She had previously had difficulties with her estranged husband, who had once abducted the child while exercising his visitation privileges under their separation agreement. According to Nicklo's testimony, she

informed Cindy Reynolds, the director of Playskool, at the time of the child's registration at Playskool, that the child had been abducted by his father before, and that the child was not to be released to him. Reynolds allegedly promised that the father would "never get [the child] out of her school."

About a month after the child had been attending Playskool, the father appeared and the child was released to him. Nicklo testified that Reynolds called her and told her that "she had forgotten" not to release the child to his father. The father took the child to Florida, and Nicklo expended $2,800 in travel and litigation expenses in order to regain custody of the child. She sued Playskool for this amount for breach of its contract not to release the child.

At trial, the district court struck all of Nicklo's testimony relating to her conversations with Reynolds, who was then dead, under former NRS 48.064 (repealed 1979 Nev. Stats. ch. 134, § 1, at 198), the "dead person" statute, ruling that her testimony was not corroborated. The district court also quashed a subpoena duces tecum to the child welfare authorities in Clark County relating to a child custody report which had been prepared on Nicklo and her husband (in which Reynolds allegedly admitted to the investigator that she had forgotten her promise to Nicklo not to release the child to his father) on the ground that the report was confidential. At the close of the trial, judgment was rendered in favor of Playskool, and Nicklo appeals.

Two issues are presented: (1) whether it was error to strike all testimony relating to Reynolds' promise not to release the child, under NRS 48.064, and (2) whether it was error to refuse to order production of the child custody report.

Nicklo's testimony relating to her conversation with Reynolds was the only live evidence of the conversation. However, a deposition of Reynolds taken by her attorneys before her death was published at trial, on motion of Playskool's counsel, in which Reynolds denied making a promise not to release the child.

In jurisdictions which have dead person statutes, introduction of evidence of the dead person's statements, by the party who represents the interest of the decedent, waives the protection of the statute. Rosche v. McCoy, 156 A.2d 307 (Pa. 1959). This fits logically into the purpose of the dead person rule, which is intended "to place the living and dead on terms of perfect equality, and, the dead being not able to testify, the living shall not." Zeigler v. Moore, 75 Nev. 91, 99, 355 P.2d

425, 430 (1959). By publication of Reynolds' deposition, the dead person, in effect, was able to testify and therefore, it was error to strike Nicklo's testimony. This conclusion is supported by NRCP 32(a)(3) which provides that "[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead. . . ." Reading this rule along with NRCP 32(a), which makes a deposition admissible against any party which had notice of the taking of the deposition "so far as admissible under the rules of evidence applied as though the witness were then present and testifying. . . ," the deposition is meant to be the equivalent of live testimony. The deposition was offered by Playskool to support its position that no contract existed, and the court's ruling deprived Nicklo of her opportunity to contradict it. This is inconsistent with the purpose intended to be accomplished by the dead person statute, and striking Nicklo's testimony was error.

Further, the statute provided that testimony as to transactions with the deceased is admissible if supported by corroborative evidence. The record card of the school was admitted into evidence. It shows the mother's name, and the name of a relative to be called in case of an emergency. There is no entry, except for a line drawn through the space, under the place for the father's name. In the space entitled "operator to contact" (before the child is released to anyone), only the mother's space was checked. While this does not corroborate the actual conversation with Reynolds, it does indicate a promise on the part of Playskool not to release the child except in accordance with the terms of the record card. It also satisfies the test of corroboration now required by most jurisdictions which still have dead person statutes, that the corroborative evidence must be such that a reasonable person could conclude that the plaintiff's testimony is probably true. Schwartz v. Davis Manufacturing Company, 189 N.W.2d 1 (Mich.App. 1971); Peck v. Wright, 372 P.2d 831 (N.M. 1962).

Former DCR 5.11 (now DCR 5.70) of the Eighth Judicial District provided, in part, as follows:

> (a) In domestic relations proceedings where the issue of custody of children is contested, the court may require an investigation to be made by the Child Custody Division of the Eighth Judicial District of the character and fitness of the parties, the economic condition of family and the financial ability of the parties to pay support. The court may continue the domestic relations proceeding for the

purpose of such investigation until the same be completed and a report submitted to the court.

(b) The written report of the investigator shall be delivered to the court in chambers and, at the direction of the court may be made available to the attorneys for the parties. *The report shall be regarded as confidential, except as provided by court order.* The report may be received as direct evidence of the facts contained therein which are within the personal knowledge of the officer who made the investigation and report. (Emphasis supplied.)

It is significant that this report was prepared in connection with other litigation prior to the initiation of this suit. The considerations which generally favor the preserving of confidentiality of records and sources of information are not present here. In this case, the information obtained from Reynolds did not relate to the purpose for which the report was made, i.e., the determination of the parents' suitability for child custody. Rather, the alleged admission by Reynolds, that she had promised not to release the child to the father, related only to the alleged contract with Nicklo. An appropriate in camera inspection of the report, coupled with a proper protective order concerning the other parts of the report which were entitled to protection as confidential and which would have no relevance to any issues at this trial, would have maintained confidentiality and still permitted the admission of evidence vital to Nicklo.

Statutes providing for confidentiality of records are in derogation of the common law right to inspect documents in which an individual has an interest, and must therefore be strictly construed. Mulford v. Davey, 64 Nev. 506, 186 P.2d 360 (1947). Strictly construing former DCR 5.11, it would appear that the provision for making such reports available by court order vests discretion in the district court to refuse production of the report if the functioning of the agency would suffer prejudice. Here, none of the purposes for which such rule was enacted would suffer by disclosure and admission of those parts of the report in which Reynolds admitted making the promise to Nicklo not to release the child, nor would the interests of the subjects of the report, i.e., Nicklo, her husband and the child, be offended. Such evidence would provide further corroboration of Nicklo's testimony, and the court's refusal to permit production of such admissions from the report must be considered an abuse of discretion.

Accordingly, we order the judgment reversed and the case remanded to the district court for a new trial.

GUNDERSON, C. J., and MANOUKIAN, BATJER, and MOWBRAY, JJ., and BEKO, D. J.,[1] concur.