ERNEST P. DAVIS v. ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, AND NORTH CAROLINA SHIPBUILDING COMPANY, A CORPORATION.

(Filed 5 June, 1947.)

1. **Waters and Watercourses § 4—**

Where a lower tract of land naturally receives the flow of surface waters from higher lands, the owners of the higher lands are not liable for damages from the drainage even though the flow is increased or accelerated by the removal of obstructions from, or the leveling or resurfacing of the higher lands, or the laying of pipes so as to drain the water under instead of over railroad tracks on the higher lands, provided they do not alter the natural drainage and provided there is no difference in the manner of its discharge which augments the damage from the natural flow, and an instruction to this effect is without error.

2. **Damages § 11—**

Where plaintiff introduces evidence as to loss of income upon the issue of damages, plaintiff's Federal income tax report is competent for the purpose of contradicting plaintiff's testimony on this aspect.

**3. Evidence § 27—**

   Where evidence is material and competent, objection on the ground that it would tend to discredit the party in the eyes of the jury is untenable.

**4. Evidence § 32½—**

   Where the .Federal income tax report of a party is competent for the purpose of contradicting his testimony as to loss of income upon the issue of damages, objection thereto on the ground that the report was improperly secured and not used for any purpose permitted under Federal Law, is unavailing, there being no objection on the ground that the report was not properly exemplified.

PLAINTIFF's appeal from *Bone, J.,* at December Term, 1946, of NEW HANOVER.

*W. F. Jones, W. L. Farmer, and Varser, McIntyre & Henry* for plaintiff, appellant.

*John H. Manning, Chauncey H. Leggett, and Howard H. Hubbard* for defendant North Carolina Shipbuilding Company, appellee.

*M. V. Barnhill, Jr., and McLean & Stacy* for defendant Atlantic Coast Line Railroad Company, appellee.

SEAWELL, J. The plaintiff's action is for recovery of damages to his property allegedly caused by the wrongful accumulation, acceleration, and diversion of surface water by defendants upon and from their own respective premises, onto and over plaintiff's premises lying upon a lower level. In this tortious act, it is alleged, the defendants acted conjointly.

The premises of plaintiff, alleged to have been damaged, consisted of a parking lot, on which several buildings were located, in the Sunset Park section of the City of Wilmington, east of the river. A spur track of the defendant Atlantic Coast Line Railroad Company adjoins and borders the plaintiff's property on the easterly side, running about northeast and southwest between plaintiff's property and that of the defendant Shipbuilding Company, which latter property it borders on the northwest. Plaintiff's property is nearer the river at a somewhat lower level than the property of either defendant. That of the Shipbuilding Company is on the highest level. At the time referred to in the pleadings and evidence the Shipbuilding Company carried on a wartime shipbuilding industry at its plant along the river in the immediate vicinity, in which a very large number of workmen were employed. The plaintiff prepared his property, consisting of about an acre, as a parking lot for automobiles, and built upon it a small storehouse and other buildings. Some time afterwards the Shipbuilding Company put the area across the railroad, opposite plaintiff's property, in shape to be used as a parking lot for its employees, and possibly others. The terrain theretofore

was somewhat irregular in topography; this was leveled off, and the lot was covered with cinders and other material furnishing a hard surface suitable for parking. The surface theretofore had been sandy.

Generally, the whole area was described as inclined so that the drainage, in the natural condition of the area, was in an northwesterly direction toward the river, and from the defendant Shipbuilding Company's higher lot across the railroad and plaintiff's property, although the evidence is conflicting as to whether all the water from the Shipbuilding Company's parking lot, in its natural condition, would have drained that way. The plaintiff's property has been described as low and swampy.

In order to protect the railroad bed from injury by flooding and washing, the defendant Company installed three drain pipes, the effect of which was to carry the drainage under the rails rather than over them, which drains discharged water on plaintiff's parking lot.

The plaintiff bases his claim of damages upon the wrongful acts of the defendants in the following particulars:

That by leveling and hard surfacing its property across the railroad and above plaintiff's property, which had theretofore been highly absorbent, and in its natural state "absorbed the surface water that fell or ordinarily accumulated thereon from all sources," the defendant Shipbuilding Company thereby accelerated the flow of water across its codefendant's right of way and upon plaintiff's land, to the latter's damage; and that the leveling and excavation of certain dunes or hills on defendant's property had the effect of diverting over plaintiff's lot surface water which would have gone elsewhere. Further, that by the installation of the drain pipes under the railroad track the surface water was diverted, dammed up, accelerated and discharged on plaintiff's land to his injury and damage.

The defendants deny that plaintiff suffered any damage by reason of the improvements put upon their own property or the manner of its use; and especially the installation of the drain pipes designated as one source of plaintiff's injury. They contend that plaintiff's injury by flooding and passing of water upon or over his premises was by reason of the natural drainage across the properties and the rainfall experienced, and not to any act of theirs; and that they did no more to their own property than they might lawfully do in its ordinary use to accomplish the legitimate purpose to which it was put.

There was much evidence taken on the hearing, contradictory in many of its aspects.

Plaintiff's evidence tended to show that as a consequence of directing the waters through the drainage pipes mentioned, his parking lot was cut in channels. That the foundations of the buildings were weakened and they were greatly damaged; and that sand, garbage, and tin cans were left upon the property by the subsiding waters; that the area had been

seen flooded up to the running boards of the cars and that the owners had to wade in after them. Experts testified for the plaintiff as to the effect of the change of topography on the flow of water and the effect of the drainage pipes installed under the Atlantic Coast Line Railroad Company's tracks in collecting and discharging water on the plaintiff's premises.

Evidence of the defense was of a contradictory nature, indicating that much of the flooding was the natural effect of the flow of water across the railroad track and on to plaintiff's property; and that at times after rains the flood was so great as to spout up when it hit the railroad tracks and dam up until it overflowed the area now occupied as a parking lot by the plaintiff.

The rationale of decision does not require detailed statement and analysis of this evidence. The verdict of the jury was against the plaintiff upon the fact of damage and is, we think, unassailable unless it was rendered under an erroneous view of the law found in the judge's instructions.

Since almost the whole charge is bracketed with exceptions it is possible only to discuss those lying closer to the gravamen of the case, the theory on which plaintiff seeks recovery. The following bear critically on the liabilities and duties of adjoining or contiguous owners with respect to the disposition of surface waters, and are under exception by appellant:

"I charge you, Gentlemen of the Jury, that under the law when one owns or occupies lower lands, he must receive waters from higher lands when they flow naturally therefrom. There is a principle of law to the effect that where two tracts of land join each other, one being lower than the other, that the lower tract is burdened with an easement to receive waters from the upper tract, which naturally flow therefrom.

"I charge you further that the owner, or one in charge of the higher lands or premises, may increase the natural flow of water, and may accelerate it, but cannot divert the water and cause it to flow upon the lands of the lower proprietor in a different manner, or in a different place from which it would naturally go. If the defendant Shipbuilding Company in this case did no more than increase or accelerate the natural flow of water upon the lands leased by the plaintiff, then the Shipbuilding Company would not be liable, but if the Shipbuilding Company dealt with the property which it had in possession in such manner as to divert water which otherwise would not have naturally flowed upon plaintiff's land, and diverted that water so that it did flow upon his land, thereby causing him damages, then the Shipbuilding Company would be liable.

"If there were no natural flow of water from the Shipbuilding Company's parking lot premises prior to the time when it was prepared by them for a parking lot, and by their action in excavating, or leveling and grading it down, they created an artificial flow of water, that theretofore had not existed, and caused it to flow in an artificial state upon the plaintiff's land, and thereby damaged him, the Shipbuilding Company would be liable, but if a natural flow of water already existed, that is, if the water naturally drained from that area, from the premises occupied by them, and later used as a parking lot, if before they did anything to it, there was a natural drain of it onto the plaintiff's land, then even though their action in leveling it down and grading may have increased and accelerated that water, they would not be liable."

"Now, Gentlemen of the Jury, as concerns the defendant railroad company, if the water came down in its natural state, as it would naturally have flowed, and the railroad company did nothing to accelerate its flow, under its tracks, then the railroad company would not be liable for damages, but if it was not a natural flow of water, but if it was a flow of water created by the wrongful diversion of the defendant Shipbuilding Company, and when the water was wrongfully diverted and discharged in that direction to the railroad company's tracks it gathered the water in pipes and discharged it upon the plaintiff's property in a manner different, it would have naturally gone, and in a way so as to damage the plaintiff's property, then the defendant Railroad Company would be liable in damages to the plaintiff.  If the water, however, was wrongfully diverted by the Shipbuilding Company, and started in its flow towards the railroad company, and the railroad company put in pipes enabling the water to go under its tracks instead of over them, and you find from the evidence that the plaintiff's property was not damaged by the water being cast upon his property in this manner through the pipes any greater than if it had flowed over the railroad tracks, and eventually gone on the property, then the railroad company would not be liable in damages to the plaintiff."

"In other words, if the stream of water which came down to the railroad company's tracks was wrongfully diverted there by the Shipbuilding Company, yet if the action of the railroad in putting the pipes under there did not cause the damage, the railroad company would not be liable."

These instructions are supported by numerous authorities. *Roberts v. Baldwin,* 151 N. C., 407, 66 S. E., 346; *Sykes v. Sykes,* 197 N. C., 37, 147 S. E., 621; *Jennings v. Bohner,* 134 N. Y. Supp., 943.

". . . As long as the drainage results in carrying the water along the natural course the servient proprietor may not complain, even

though natural barriers on the higher land have been cut down and the flow of water both accelerated and increased. Were the rule otherwise, there would be no method by which any one owner could improve his land by the construction of ditches and drains which would carry the drainage upon another's property, because the purpose of such improvement in every instance is to hasten and increase the flow of water, and this object is only attained by the removal of natural barriers." *Fenton & Thompson R. Co. v. Adams,* 211 Ill., 201, 77 N. E., 531, 535.

If the owner of adjacent property on a high level were not permitted to prepare his property for any legitimate purpose to which it might be put by leveling it or clearing it or other improvement, on the theory that he had no right to accelerate the flow of water therefrom but must leave it as an absorbent to retard its flow, it would deprive such owner of the use of his property. "If it be the law of California that an owner cannot level it, the result would be to condemn to sterility vast acreages of agricultural land situated in this state." *Combes v. Reynolds,* 43 Cal. App., 656, 185 Pac., 877, 879; *Parker v. Railway,* 123 N. C., 71, 31 S. E., 381; *Rice v. Railroad,* 130 N. C., 375, 41 S. E., 1031; *Launstein v. Launstein,* 150 Mich., 425, 114 N. W., 383; *Kaufman v. Greisemer,* 26 Pa. St., 407, 67 Am. Dec., 437; Waters & Watercourses, Franham, Sec. 895, p. 2622.

We do not find in the exceptive portions of the judge's charge error which might have prejudiced the jury against plaintiff's cause; and they were triers of the facts.

Since the verdict of the jury was against the plaintiff on the question of injury and damage, ordinarily evidence directed to the *quantum* of damages and not considered on the other issues becomes immaterial. In the present case, however, the defendants sought to contradict the witness in the estimate of the damages he had suffered by the introduction of his Internal Revenue income tax report for the period during which he complains his income from the property was diminished through the alleged wrongful acts of the defendants. The income tax report showed that his income was far less than that claimed by him in the present case. The plaintiff contends that the effect of the introduction of the income tax report was to discredit the plaintiff in the eyes of the jury as criminally evading the Federal Income Tax Laws. The income tax report, however, was certainly competent for the purpose introduced since it is in plain contradiction as to his testimony about his income. If competent at all, plaintiff could not complain of its effect upon any other issue before the jury. Plaintiff, however, claims that it was incompetent because improperly secured and not used for any purpose permitted under the Federal law. There is no objection on the ground that the

report is not properly exemplified. We do not think that the objection is tenable.

As stated, we have not thought it practicable to list all the exceptions brought forward by counsel within the space and time afforded. They have all been carefully examined and considered, and the investigation leads us to the conclusion that the record discloses

No error.