PEARSON, TILLMAN, Chief Judge.
The defendant in an action for personal injury, arising out of a collision at an intersection between an automobile and a motorcycle, appeals a final judgment entered pursuant' to a jury verdict. The plaintiff driver was permitted to testify as to the actions of defendant-administrator’s decedent as driver in the operation of decedent’s automobile immediately prior to the collision. The controlling question is whether reversible error was committed by the admission of such testimony over the objection of the defendant that the testimony was as to a “transaction” within the meaning of section 90.05, Fla.Stat., F.S.A. (Dead Man’s Statute) [1]
We hold that the objection to the questioned testimony [2] should have been sustain *33 ed, and finding the error prejudicial, we reverse for a new trial.
This question was discussed but not decided in Day v. Stickle, Fla.App.1959, 113 So.2d 559, 80 A.L.R.2d 1291, because as was pointed out in the opinion a decision was not necessary for the holding in that case. Nevertheless it was pointed out that in this jurisdiction the word “transaction” as used in this statute has been judicially construed by the Supreme Court of Florida, "to encompass every variety of affairs which can form the subject of negotiation, intermews or actions between two persons[Emphasis added] Holliday v. McKinne, 22 Fla. 153; Chapin v. Mitchell, 44 Fla. 225, 32 So. 875, 878; Embrey v. Southern Gas & Electric Corp., Fla. 1953, 63 So.2d 258, 263.
To affirm the judgment appealed we would be required to concur with the trial judge in holding that an automobile accident is not a “transaction” within the meaning of the *34 Dead Man’s Statute. The portion of the record quoted in footnote 2, supra, clearly demonstrates that the judge promptly recognized that this point was essential to a determination of the matter. His ruling was to the effect that as long as the plaintiff described the actions of automobiles and not individuals the statute did not prohibit the testimony. However, the problem is more complex than merely holding an automobile collision constitutes or does not constitute a transaction.
The Supreme Court of Arkansas in Rankin v. Morgan, 193 Ark. 751, 102 S.W.2d 552, held that an automobile collision is not a transaction within the meaning of that word in their Dead Man’s Statute because the word “transaction” should be defined in its ordinary meaning, to-wit: “ ‘A business deal; an act involving buying and selling; as, the transactions on the exchange.’ ” In Shaneybrook v. Blizzard, 209 Md. 304, 121 A.2d 218, it was held that a driver could testify as to his observations of a decedent driver because the relationship between the respective drivers was fortuitous and involuntary, and the word “transaction” imports a mutuality or concert of action.[3] The Maryland court further stated that the deceased operator of the automobile was personally unknown to the plaintiff driver. Another jurisdiction which holds that a driver may testify as to his observations of the actions of a deceased driver is Iowa. The Supreme Court of that state in Turbot v. Repp, 247 Iowa 69, 72 N.W.2d 565, upheld the trial court’s ruling that a driver was competent to testify, notwithstanding the Dead Man’s Statute, as to the deceased driver’s actions because the word “transaction” used in the statute is not to be enlarged by construction and only a particular kind of testimony will be forbidden. The court continued that testimony concerning the appearance and actions of a decedent, ascertained merely by observation; and not for anything the witness had done for decedent is competent and admissible.[4]
Thus it can be stated that there are numerous jurisdictions which base their reasoning upon the premise that a transaction can only occur where the parties involve-' are known to each other personally or mutu ally consent to the transaction. To follow this reasoning would, of course, make the Dead Man’s Statute inapplicable to all negligence actions, except for those few occasions where the injured party by coincidence personally knew the tort-feasor.[5]
Other jurisdictions follow a contrary view to the jurisdictions just cited. For example, in Illinois a surviving motorist interested in the outcome of a personal injury action is not allowed to testify as to the actions of the deceased driver. Countryman v. Sullivan, 344 Ill.App. 371, 100 N.E.2d 799. Alabama also' follows the view that the Dead Man’s Statute is a bar to a claimant-driver testifying as to acts of the decedent in regard to operation of the latter’s vehicle. The Supreme Court of Alabama in the case of Southern Natural Gas Co. v. Davidson, 225 Ala. 171, 142 So. 63, held that a plaintiff driver could not testify as to the actions of the deceased driver because their concurring conduct was a part of the res gestae of a personal encounter between them and such concurring conduct constituted a “transaction” within the meaning of the Dead Man’s Statute.
To the same effect is In Re Mueller’s Estate, 166 Neb. 376, 89 N.W.2d 137, where it was held that a claimant-driver could not testify as to the acts of deceased driver and himself in regard to operation of their re *35 spective vehicles immediately before and at the time of the collision. The court in arriving at its holding defined the word “transaction” in terms very similar to the definition given by our Supreme Court.[6] The Nebraska court further decided that the Dead Man’s Statute applied to tort actions, as well as those arising out of contract.[7] In arriving at its holding, the Court reasoned that the actions of the interested party “ ‘as well as the movements of the deceased, were so closely related to, and inseparably connected with, the accident as to bring them within the knowledge or observation of the deceased, [making] them a necessary part of the accident, and thus [constituting] a transaction with the deceased.’ ”
Thus, as was stated in Day v. Stickle, supra, the “judicial constructions of the word transaction in other jurisdictions as applied to automobile accidents has been almost as varied as the number of courts defining the term.” In Day v. Stickle, supra, it was held that the Dead Man’s Statute does not apply to a guest in an automobile, who is completely inactive as to the control of the automobile in which he is riding, who in no way mutually participates in the ensuing collision, and who is merely the unfortunate victim of the actions of others, which actions he observes as independent facts and not as part of a transaction between the deceased driver and himself.
Facts and circumstances of this case are different, and consequently the same rule of law is not dispositive of the issue. Here we have an interested witness, who has complete control of his motorcycle, who observes the decedent’s station wagon “[shoot] out in front of [him]”,[8] and who reacts in a certain way just before the collision. So we have a witness who actively participates in the ensuing collision. The deceased driver, likewise, participates in the same occurrence. We are not unmindful that the word “transaction” in the statute has been strictly construed.[9] Nevertheless both drivers’ actions are so closely related and connected with the accident that their courses and movements constitute a “variety of affair which [is] * * * the subject of action between two persons.”
Because we have determined that there was a transaction, it is our holding that testimony by the plaintiff-driver as to the actions of the deceased driver in the operation of his automobile, allegedly causing the accident, comes within the prohibition of § 90.05, Fla.Stat., F.S.A., and is therefore barred.[10]
We have considered appellee’s contention that the provisions of the statute were waived by this appellant, but do not find such to be the case. Also, we cannot hold the error harmless because the inadmissible testimony went to the very heart of the liability issue.
Appellant’s two remaining points are as follows: Point II, directed to alleged improper comments upon the evidence by the trial judge, and Point III, directed to a ruling of the trial judge which precluded the use of plaintiff’s income tax returns for impeachment when plaintiff claimed loss of earnings. It is unnecessary to consider Point II because reversal is required under Point I above discussed, but Point III must be dealt with because this case must be retried.
The plaintiff is a taxi cab driver. He claimed a loss of earnings and a loss of earning capacity as a result of the accident, and testified as to the extent of these losses. *36 The defendant sought to use properly-authenticated copies of the plaintiff’s income tax returns on cross-examination for the purpose of impeaching the testimony as to the amount of money earned before the accident. The trial judge, finding that income tax returns, especially those of cab drivers, where a large portion of the income is from gratuities, are unreliable indications of true income, held that the returns could not be used for impeachment.[11] The ruling was error. The court may not presume the plaintiff guilty of the crime of making a false return. The internal revenue tax returns were competent to be admitted as evidence bearing upon the issue of plaintiff’s loss of income. Merriman v. Cities Service Gas Co., 11 F.R.D. 584 (W.D.Mo. 1951); Davis v. Atlantic Coast Line Railroad Co., 227 N.C. 561, 42 S.E.2d 905; see Graham Farm Land Co. v. Commonwealth, 363 Pa. 571, 70 A.2d 219.
The judgment is reversed and the cause remanded for a new trial.

. “Witnesses; as affected by interest.— No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of Ms interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence.”

. The questioned testimony is as follows:
“Q. Mr. Farley, I want you to take us back on the day of April the 6th to the time you left your homo, which I understand was around two o’clock, and *33 tell us just what your movements were and what occurred up to the time of the accident.
“A. Well, sir, I left home around two o’clock, started, well, east on 36th Street to Allapattah, 17th Avenue made a right turn, come south on 17th Avenue to 22nd Street. I got caught by a red light there, had to stop. When I started up again, got to 21st Terrace, a car — ■
Hs ‡ & #
“THE COURT: Agreed, transactions and communications. I am looking for something that will say that a collision is a transaction.
“MR. PREDDY: These cases here, that is what they are holding. This Day v. Stickle is an automobile accident case between two cars, your Honor.
“THE COURT: But I don’t know what took place. We are told this man is going to talk about an automobile. I am going to let him talk about it regardless. I will overrule your objection, but the witness is instructed not to use the man’s name, not to use any statement that he may or may not have made, or any statement you may or may not have made to him. You can refer to the proposition by saying — -what kind of a car was it?
“MR. HEADLEY: A Plymouth station wagon.
“THE COURT: —‘A Plymouth station wagon did this or that’, and refer to it as little as possible.
* * * * *
“Q. (By Mr. Headley) Mr. Earley, as you left the traffic light, what happened next?
“A. I proceeded south on 17th Avenue. I got to 21st Terrace. This station wagon, this blue station wagon, shot out in front of me.
“THE COURT: What kind of a station wagon was it?
“THE WITNESS: It was a Plymouth station wagon.
“Q. (By Mr. Headley) From which direction did it come out in front of you?
“A. From my right.
“Q. Your right?
“A. Yes, sir.
“Q. How far is 21st Terrace from 22nd Street where you had been stopped for the traffic light?
“A. I don’t know the distance, but it is a short block there.
“Q. It is one block?
“A. Yes, sir.
“Q. Where this Plymouth station wagon came out from your right, is there any traffic control devices there that you know of?
“A. No, sir.
“Q. Are there any stop signs or things of that nature at that intersection?
“A. Yes, sir. There is 'stop signs on 21st Terrace to face traffic coming across—
“THE COURT: That has been established by the police officer.
“Q. (By Mr. Headley) Now, what did you do when you saw this Plymouth station wagon coming from your right across in front of you?
“A. I have a hand brake and a foot brake and I applied both of them and tried to lay the motorcycle down to the right so that I, if possible, could go behind him. I was too close and he was coming too fast for me to dodge him.
“Q. What was your approximate speed at the time?
“A. I would say between twenty and twenty-five miles an hour, somewhere in that neighborhood.
“Q. What next occurred when you saw him and you attempted to lay your motor down to avoid him? What happened then?
“A. Well, I hit him.
“Q. What portion of your motorcycle hit what portion of the station wagon?
“A. The front of my motorcycle hit the rear of the station wagon.”

. Two recent cases following this view are Knoepfle v. Suko, N.D.1961, 108 N.W. 2d 456, and Harper v. Johnson, Tex.1961, 345 S.W.2d 277.

. Similar reasoning is advanced in Seligman v. Orth, 205 Wis. 199, 236 N.W. 115.

. Jones, Evidence § 773 (5th ed. 1958) states that “Ordinarily, the [dead man’s] statute applies to tort actions as well as to actions ex contractu.” See footnote 7, infra.

. Embrey v. Southern Gas & Electric Corp., Ela.1953, 63 So.2d 258, 263.

. To the same effect is Zeigler v. Moore, 1959, 75 Nev. 91, 335 P.2d 425 and cases cited at 97 C.J.S. Witnesses § 133, n. 92; 58 Am.Jur., Witnesses § 223. Also see footnote 5, supra.

. See footnote 2, supra.

. Day v. Stickle, Fla.1959, 113 So.2d 559, 563, 80 A.L.R.2d 1291.

. The question of whether this statute is too severe, in that many honest claims may never be established, is for our legislature to resolve.

. “THE COURT: I feel that an income tax return and what one actually earns often varies. I think everybody pays as little tax as possible. Under this economy, if one didn’t, he wouldn’t have anything at all. I am not going to let you use it for the purpose you are seeking. Of course, you can proffer it.
“MR. PREDDY: I would like to.
“THE COURT: Proffer it right now.
“MR. PREDDY: I would like to have this marked, if I may, and the record is clear that I attempted to use this and
that this was produced under Court order to the defense counsel, and I am attempting to use this under cross-examination.
“MR. HEADDEY: That’s right.
(The document referred to was thereupon marked ‘Defendant’s Exhibit A-3 for Identification.’)
“MR. PREDDY: That is proffered.
“THE COURT: I think if it was so used, a Federal man could get hold of it and come over here and cause a lot of trouble for him.”