IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-589

No. COA20-137-2
Supersedes 275 N.C. App. 651, 854 S.E.2d. 27 (2020)

Filed 2 November 2021

Wake County, No. 18 CVD 3242

MICHAEL BRANDON POYTHRESS, Plaintiff

v.

LISSETE R. POYTHRESS, Defendant.

Appeal by Defendant from judgment entered 8 August 2019 by the Honorable Ned Mangum in Wake County District Court. Heard in the Court of Appeals 21 October 2020. Opinion filed 31 December 2020. Motion for Reconsideration allowed 12 February 2021.

*Fox Rothschild LLP, by Michelle D. Connell, for Plaintiff-Appellee.*

*John M. Kirby for Defendant-Appellant.*

DILLON, Judge.

¶ 1        Defendant Lissete R. Poythress ("Wife") appeals portions of a judgment in favor of Plaintiff Michael Brandon Poythress ("Husband"), declaring certain real estate, a real estate-owning limited liability company, and other assets to be his sole property based on the terms of their premarital agreement (the "Premarital Agreement" or "Agreement"). We filed an opinion on 31 December 2020. Having

allowed Defendant's Motion to Reconsider, we hereby file this opinion to replace our 31 December 2020 opinion. Judge Carpenter participated in the reconsideration of our prior opinion as Judge Young's term ended on 31 December 2020.

## I. Background

¶ 2 Husband and Wife were married in 2010. Husband had recently divorced his first wife, a marriage which produced three children. Though he had significant assets, he lost much of his wealth in that divorce. This experience prompted Husband to seek the Agreement with Wife to protect his assets should his second marriage also end in divorce. Accordingly, just prior their marriage, Husband and Wife entered into the Premarital Agreement.

¶ 3 Wife was also previously married and had two children of her own. She, however, did not have significant assets when she married Husband.

¶ 4 During their marriage, Husband and Wife acquired several properties which, at the time of their separation, were titled *either* to Wife, to Husband and Wife jointly, or to an entity which they jointly owned. The consideration paid to acquire these properties came either from Husband's separate property or from loans guaranteed by both Husband and Wife.

¶ 5 Husband and Wife separated in 2017.

¶ 6 Husband brought this action claiming that, based on the Agreement, certain assets acquired during the marriage are solely his, notwithstanding how the

ownership of the assets may be titled/documented. Wife, though, claims that the assets are marital and should be divided equally, as the Agreement provides that all marital property is to be split equally upon separation/divorce.

After a hearing on the matter, the trial court entered an order declaring Husband as the sole owner of the assets and directing Wife to execute documents to transfer her legal interest therein. The trial court also awarded Husband attorneys' fees, based on its finding that Wife had breached the Agreement by not previously executing the documents. Wife appealed.

## II. Argument

The trial court's order covered all property owned by Husband and/or Wife. Wife's brief on appeal takes issue with how the trial court distributed *most* of these assets. As to the assets about which Wife makes no argument, the order of the trial court is affirmed. The assets about which Wife does make an argument on appeal (the "disputed assets") are as follows:

> Ownership Interest in Pogo, LLC- POGO, LLC, ("POGO") is a limited liability company that Husband and Wife set up during the marriage. The parties established POGO to serve as the holding entity for certain investment real estate acquired during their marriage. All documentation in evidence, including POGO tax returns, show that POGO was established and owned during the marriage by both Husband and Wife in equal shares.
>
> Beach House- Husband purchased this property in his own name, using his separate assets to do so. However, sometime prior to separation,

Husband re-titled the beach house to himself and Wife as tenants by the entirety.

Peru Assets- Husband purchased various assets in Peru, Wife's home country, during the marriage. Wife challenges the trial court's order concerning some of the Peruvian assets, specifically the assets in which either she or both she and Husband are listed as the owner(s). Wife does not challenge the trial court's determination regarding Peruvian assets where she was not listed as an owner.

¶ 9 We hold that the trial court erred in its order in two important respects. First, the trial court erred in finding that Husband had provided all the consideration for the acquisition of many of the disputed assets. The trial court relied on this finding in its determination that the assets were Husband's alone. Second, the trial court erred in finding clear, cogent, and convincing evidence that Husband did not intend to gift to the marriage his separate assets used to acquire the disputed assets. We address each argument in turn.

A. Consideration Provided by Wife

¶ 10 The trial court erroneously found that Husband provided *all* consideration to acquire the disputed properties. This is simply not true, at least with respect with POGO, as explained below.

¶ 11 The POGO assets were acquired as follows:

¶ 12 As of the parties' date of separation, POGO owned six investment real estate properties, all located in North Carolina.

¶ 13        Three of these six properties were acquired early in the marriage and originally titled to Husband and Wife, personally. All three properties were acquired with consideration provided by Husband from his separate property. Sometime after these three properties were acquired, Husband and Wife set up POGO, after which *they executed deeds,* re-titling these properties to POGO.

¶ 14        The fourth and fifth properties were acquired directly by POGO through lines and loans *guaranteed by both Husband and Wife.* POGO first obtained a line of credit, secured by the original three properties and *guaranteed by both Husband and Wife.* POGO then purchased the fourth and fifth properties with proceeds from this line and from a mortgage *guaranteed by both parties.*

¶ 15        The sixth property was contributed to POGO by Husband. Husband came to own this sixth property, a single-family residence, in his own name in resolution of claims from his first divorce. He re-titled that home to POGO. POGO then obtained a cash-out mortgage loan secured by this property and *guaranteed by both parties.*

¶ 16        The trial court failed to recognize that Wife provided consideration for the POGO assets in two ways. First, the trial court failed to recognize that the act of personally guaranteeing a loan used to acquire an asset is, itself, consideration. Here, Wife personally guaranteed the lines/loans used to acquire several of the POGO properties. Under the Agreement, Wife had no obligation to personally guarantee any loan concerning Husband's separate property. Rather, Wife was only required

under the Agreement to pledge her marital interest, if any, in Husband's separate properties for such loans. However, by personally guaranteeing POGO loans, *Wife's* separate property interests were put at risk. Though the risk to her separate assets may have been slight, said risk *is* consideration. *Young v. Johnston County*, 190 N.C. 52, 57, 128 S.E. 401, 403 (1925) ("The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been said, is for the parties to consider at the time of making the contract, and not for the court when it is sought to be enforced.").

¶ 17 And, second, the three properties used to initially capitalize POGO were owned by Husband and Wife. Wife signed her tenancy by the entirety interest in said properties to POGO. Though Husband may have provided the consideration to acquire these three properties prior to the establishment of POGO, said properties were jointly owned by Husband and Wife at the time they were deeded over to POGO and constitute some consideration.

B. Gifts to Marital Estate by Husband

¶ 18 To the extent that the disputed properties were acquired with Husband's separate property, the trial court found that "clear, cogent, and convincing" evidence existed to rebut any presumption that Husband intended to gift these separate assets to the marital estate. In so finding, the trial court relied largely on the terms of the

Agreement. We conclude that the trial court erred in relying on the terms of the Agreement as evidence to rebut the gift presumption, as explained below.

¶ 19 The ownership of property upon separation/divorce is typically resolved through application of our equitable distribution statute, codified in Section 50-20 of our General Statutes. However, parties may contractually agree for the mechanics of our equitable distribution statute to not apply. N.C. Gen. Stat. § 50-20(c) (2017).

¶ 20 Here, by executing the Agreement, Husband and Wife contractually agreed that our equitable distribution statute would not apply. Indeed, the Agreement expressly provides how all their property would be distributed upon separation and that the equitable distribution statute would not apply to determine the distribution. *See Hagler v. Hagler*, 319 N.C. 287, 290, 354 S.E.2d 228, 232 (1987) (recognizing that "[o]ur statutes also contain a mechanism whereby the parties to a marriage may forego equitable distribution and decide themselves how their marital estate will be divided upon divorce").

¶ 21 The evidence showed and the trial court found that, *on paper*, all the disputed assets were owned by Husband and Wife jointly. Specifically, the POGO tax returns and company documents reflect that Husband and Wife are both members of POGO, with each owning a 50% interest therein; the recorded deed for the beach house lists Husband and Wife as owners as tenants by the entirety; and the documentation for the Peru properties show that they are all jointly owned by Husband and Wife. *See*

*Davis v. R.R.*, 227 N.C. 561, 566, 42 S.E.2d 905, 909 (1947) (holding that income tax return is competent evidence); *Loy v. Lorm Corp.*, 52 N.C. App. 428, 443, 278 S.E.2d 897, 907 (1981) (holding that information reported on tax returns are "highly relevant" evidence of a fact to be proved).

¶ 22    We note that the equitable distribution statute and the cases decided thereunder are not directly on point to resolve the "gift" question, as the parties have agreed that the matter is not to be subject to that statute.

¶ 23    Under our common law, a valid gift (whether conditional or unconditional) occurs when there is (1) donative intent and (2) actual or constructive delivery. *Halloway v. Wachovia*, 333 N.C. 94, 100, 423 S.E.2d 752, 755 (1992).

¶ 24    Our Supreme Court has held that—as a matter of common law, apart from our equitable distribution statute—where a spouse allows his separate assets to be used to acquire property titled to both spouses as tenants by the entirety or to the other spouse, it is presumed that the spouse supplying the consideration has made a gift to the marriage; it is not presumed that the transaction creates a resulting trust in favor of the spouse supplying the consideration. *Mims v. Mims*, 305 N.C. 41, 53-54, 286 S.E.2d 779, 788 (1982). Our Supreme Court further held that this gift presumption may only be overcome by "clear, cogent, and convincing" evidence. *Id.* at 57, 286 S.E.2d at 790.

¶ 25   We are aware that our equitable distribution statute provides that the gift presumption may be overcome by "the greater weight of the evidence." N.C. Gen. Stat. § 50-20(b)(1). But, again, this present dispute is not governed by that statute.

¶ 26   The trial court erroneously relied on the Agreement as evidence to rebut the marital gift presumption, finding that Husband's "procurement of and reliance on the definitions of separate property in the Premarital Agreement is clear, cogent, and convincing evidence sufficient to rebut any such presumption."

¶ 27   The Agreement provides that property acquired during the marriage by Husband with his separate assets would be solely his upon separation. That is, the Agreement provides that if Husband and Wife divorce, the property owned by Husband prior to marriage and any property he acquired during marriage using his separate property would be his separate property. Wife waived all marital interest in Husband's property, whether the marriage ended in divorce or Husband's death.

¶ 28   However, Paragraph 21 of the Agreement provides that Husband could make gifts to Wife or to the marital estate during the marriage:

> 21. <u>VOLUNTARY TRANSFERS PERMITTED</u>. The purpose of this Agreement is to limit the rights of each party in the assets of his or her spouse in the event of death, separation or divorce, but this Agreement shall not be construed as placing any limitation on the rights of either party to make voluntary *inter vivos* and/or testamentary transfers of his or her assets to his or her spouse.
>
> In the event that [Husband] shall create [ ] tenancies by the entirety, or otherwise so establish assets that upon [his] death[,] it shall be

presumed that [Husband] presumed that [he] intended such passage and [that Wife] shall then become the sole and uncontested owner of such asset or assets, anything herein contained to the contrary notwithstanding.

. . . [It is] the wish of each party that any affirmative action taken by either after the signing of this Agreement, whether it be testamentary or in the creation of joint assets, shall override the releases and renunciations herein set forth.

[T]he parties acknowledge that no representation or promises of any kind whatsoever have been made by either of them to the other with respect to any such transfers, gifts, contracts, conveyances, or fiduciary relationships.

The language in this Paragraph 21 is unambiguous: The first section recognizes that Husband may make gifts of his separate property during the marriage to Wife.

The second and third sections indicate that Husband could transfer property to the marital estate, which would then become "solely" Wife's property upon his death, notwithstanding her waiver of her marital interests in his estate provided by North Carolina law. These sections, however, do *not* state that such transfers to the marital estate by Husband were not otherwise to be deemed a present, unconditional gift to the marital estate. Rather, the third section of Paragraph 21 expressly provides that any affirmative action by Husband to create joint assets during the marriage "shall override [Wife's] releases and renunciations" in the Agreement.

¶ 30    And the fourth section affirms there was no understanding at the time the Agreement was executed between the parties with respect to any transfers that might be made during the marriage.

¶ 31    In sum, there is nothing in the Agreement stating that property titled to the parties jointly was to be deemed Husband's separate property upon their separation/divorce.  It may be that Husband misunderstood the terms of the Agreement.  But we must look to the terms of the Agreement and the actions of the parties concerning the Agreement to determine its meaning.  We now consider the evidence concerning each asset category.

¶ 32    POGO-The tax returns and other documentation concerning POGO indicated that each party owned a 50% interest.  Indeed, Husband testified to this fact.  He also testified that he told his accountant on one occasion during the marriage that he wanted to change the ownership interests in POGO to reflect him as owning a 70% interest and Wife owning only a 30% interest, though he and Wife never followed through on any such amendment.  In any event, assuming Husband provided all the initial capital for POGO, the documentation creates a presumption that Husband intended the contribution to be a gift.

¶ 33    We conclude that the evidence was not "clear, cogent, and convincing" to overcome the gift presumption as a matter of law.  Indeed, the only evidence that Husband did *not* intend a gift was a few lines in Husband's self-serving testimony

that he did not *subjectively* intend gifts to Wife when he allowed properties to be titled to POGO, an intent that he never shared with anyone prior to the separation.

¶ 34    We are aware of a case in which our Court held that testimony by a spouse concerning a lack of intent to make a gift when titling separate property to the marriage, without other evidence, is not necessarily insufficient to constitute clear, cogent, and convincing evidence to overcome the marital gift presumption. *Romulus v. Romulus*, 215 N.C. App. 495, 506, 715 S.E.2d 308, 316 (2011) ("Yet, arguably the only evidence which could potentially support findings of fact to rebut the marital presumption is plaintiff's testimony as to her intent. Herein lies the issue which the trial court must resolve on remand.") *Romulus*, however, is distinguishable from the present case. In *Romulus*, there was not much in evidence from which it could be determined *either way* whether a wife intended to gift a house to the marriage when she titled it to her and her spouse. Accordingly, in that case, we held that the wife's testimony alone might be enough to constitute evidence sufficient to rebut the marital presumption. *Id.* at 515-16, 715 S.E.2d at 322.

¶ 35    Here, though, there is substantial evidence *from Husband* through his words and actions that he *did intend* POGO and the three properties used to initially capitalize POGO to be joint assets, in addition his conversation with his accountant about changing his ownership interest from 50% to 70%. For instance, Husband testified that he wanted Wife to be involved in real estate investing and that the first

property was originally titled to her only and was purchased to get her started. He testified that Wife was active in locating properties, that she participated in managing them, that she helped in negotiating for some of the purchases, and that she found a property and the tenant for one of the properties that they acquired through POGO. He testified that POGO was so named based on a combination of their last names and that their goal was to acquire ten properties through POGO so that their combined five children (from their respective prior marriages) would each one day have two rental properties apiece. Further, Husband participated with Wife in the acquisition of several POGO properties with the proceeds from loans guaranteed by both of them, never telling Wife that she was guaranteeing loans to buy property he considered to be his separate property.

¶ 36 In sum, all this evidence, overwhelmingly demonstrates that Husband and Wife jointly own POGO.

¶ 37 It may be that Husband thought that POGO would revert to him if the marriage ended in divorce. However, this belief would still indicate that he intended gifts, though perhaps *conditional* gifts. Indeed, such belief does not indicate a resulting trust, whereby he thought that Wife was merely holding her 50% interest in POGO in trust for him.

¶ 38 But the evidence is lacking to show even a gift, conditioned on the marriage not ending in divorce. Our Court has held as follows with *conditional* gifts generally:

> A person has the right to give away his or her property as he or she chooses and may limit a gift to a particular purpose, and render it so conditioned and dependent upon an expected state of facts that, failing that state of facts, the gift should fail with it. . . .
>
> The intention of the donor to condition the gift must be measured at the time the gift is made, as any undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expression and excludes all questions in regard to his unexpressed intention.

*Courts v. Annie Penn*, 111 N.C. App. 134, 139, 431 S.E.2d 864, 866-67 (1993) (quotation marks omitted). The record here, though, does not disclose any evidence regarding Husband's words or actions that Wife's POGO interests would revert to him if the marriage ended in divorce.

¶ 39        The Beach House-The beach house was never titled to POGO. Rather, Husband acquired this property in his own name with his own assets. He later re-titled it to both himself and Wife as tenants by the entirety. This act created a rebuttable presumption that he intended a gift of the beach house to the marriage. As with POGO, the trial court erroneously found that the gift presumption was overcome, in part, by the terms of the Agreement. But, regarding the beach house, the trial court also relied on a conversation that Husband and Wife had when he made the transfer to rebut the presumption. In this conversation, Wife indicated that

she was afraid that Husband's ex-wife would kick her out of the beach house were he to die as the sole owner. The trial court found that Husband, therefore, re-titled the property to the marital estate *so that it would become Wife's if he were to die*. This conversation is *some* evidence as to what the parties, especially Husband, was thinking when the property was re-titled. This finding *could* alone support an ultimate finding that Husband intended only a resulting trust, that the property be held by the marital estate for his benefit, whereby Wife would only acquire any interest upon his death. We, therefore, vacate the portion of the order concerning the beach house and remand for further findings on this issue. On remand, the trial court must determine whether the conversation and other competent evidence in the record, apart from the Agreement, constitute "clear, cogent, and convincing" evidence to overcome the presumption that Husband gifted his beach house to himself and Wife jointly.

¶ 40    <u>Peru Assets</u>-Wife challenges the trial court's order concerning interests in four Peruvian companies and several parcels of real estate in Peru.

¶ 41    She argues that the trial court erred by exercising jurisdiction over these Peruvian properties. We disagree. The trial court had *in personam* jurisdiction over the parties, as they were married in North Carolina, entered the Agreement in North Carolina, and subjected themselves to the jurisdiction of the court. And the trial court had subject matter jurisdiction to resolve the contract claim. Of course, whether Peru

will honor a judgment from North Carolina concerning property located in Peru is not before us.

¶ 42 Alternatively, Wife argues that the trial court erred by declaring Husband the sole owner of these Peruvian assets. It is unclear from the findings in whose name(s) these properties are actually held in Peru or how they came to be so held. We vacate the portion of the order declaring that these properties are Husband's properties and remand for the trial court to make further findings with respect to these properties. The trial court, in its discretion, may hear additional evidence concerning these properties and consider legal arguments from the parties, including the effect of Peruvian property law, if any, on our marital gift presumption.

## III. Conclusion

¶ 43 We reverse the trial court's order concerning POGO and the assets owned by POGO. We conclude that POGO is owned 50/50 by Husband and Wife.

¶ 44 We vacate and remand the trial court's order concerning the beach house. There is a presumption that Husband intended a gift of the beach house to the marriage when he executed a deed retitling the beach house to himself and Wife as tenants by the entirety. On remand, the trial court must determine whether there is "clear, cogent, and convincing" evidence in the record, apart from the terms of the Agreement, to overcome the gift presumption.

¶ 45      We vacate and remand the trial court's order concerning any Peruvian assets where the record owner is either Husband and Wife jointly or Wife solely.  The trial court did not err in finding that Husband provided the only consideration to acquire these assets, as Wife does not challenge these findings.  On remand, the trial court shall determine whether North Carolina or Peruvian law controls concerning the ownership of said assets and apply the appropriate law to determine how these assets are to be distributed.

¶ 46      We conclude that the trial court erred in its award of attorneys' fees.

¶ 47      We affirm the trial court's order in all other respects.

AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED IN PART.

Judges MURPHY and CARPENTER concur.